[Civ. No. 3326. Third Appellate District.—March 15, 1929.]

NELLO BARSOTTI, Respondent, v. J. D. IMPERATRICE et al., Defendants; M. A. CALDARALLA et al., Appellants.

W. M. Conley, Philip Conley and Matthew Conley for Appellants.

Barcroft & Barcroft and J. J. Cochlan for Respondent.

FINCH, P. J.—This action involves a contract for the sale by the plaintiff to the defendant M. A. Caldaralla Company, a copartnership, of four carloads of grapes. The complaint originally contained three counts. In the first it is alleged that the defendant Imperatrice gave his personal check to the plaintiff in payment of the agreed price of the first carload, but that the check was "dishonored and the payment thereof refused." In the second count it is alleged that the carload of grapes referred to in the first count and a second carload were delivered to the defendants, of the total agreed value of $1,849.77, only '$500 of which has been paid. In the third count it is alleged that upon the

delivery of the two carloads of grapes mentioned, the defendants "breached and violated said contract in that they failed and refused to pay plaintiff for said grapes according to said contract or at all. That by reason of the breach and violation of said contract by the defendants as aforesaid, plaintiff, in order to minimize loss to himself, after due diligence, found a buyer for 43 tons of grapes, which was the amount thereof remaining undelivered to defendants and originally covered by said contract, and plaintiff received the purchase price of $57.50 per ton for said grapes. That said price was the highest price obtainable for said grapes in Madera, California, on said date." Deducting the amount alleged to have been received for the forty-three tons of grapes from the amount they would have brought at the agreed price of $60 a ton leaves an alleged loss of $107.50. Judgment was demanded for the amount of this loss and the alleged unpaid balance due for the first two carloads of grapes, or a total of $1,457.27. The fourth count, added by amendment, is, in substance, a combination of the other three and it need not be further noticed. A copy of the contract is attached to and made a part of the complaint. It provides:

"This certifies that Nello-Barsotti . . . has sold to M. A. Caldaralla Co. all the hereinafter mentioned fruit crops buyers shall find suitable for local eastern markets, . . . delivered at Madera Team, not later than Sept. 10 to start, . . . price 60.00 F. O. B. Madera in car. . . . The seller agrees to pick and deliver all of said fruits at his own expense, in good condition, entirely free from mildew, or smut, or rain, or sand damage and free from any damage, whatsoever, and at the times directed by the buyer. The buyer agrees to pay for said fruit upon completion of the delivery thereof and presentation of weight tags therefor, at the office of the buyers at 419–421 Davis Street, San Francisco, California. . . . This contract is understood by both parties to constitute an absolute sale, but until delivery has been completed seller agrees to and assume all risks of loss or damages of whatsoever kind or nature to any undelivered part of said crop. Time is of the essence of this agreement and no understanding other than herein expressed shall vary or modify the transaction."

The first count of the complaint stated a cause of action, if any, against defendant Imperatrice personally. The trial court granted his motion for a nonsuit. Judgment was entered against defendants Caldaralla and Osborn for the amount demanded and they have appealed.

■ The only breach of the contract by the defendants alleged in the complaint is that they "failed and refused to pay plaintiff for said grapes," the grapes which had been delivered, "according to said contract or at all." Since the contract provides for payment "for said fruit upon completion of the delivery thereof" and the complaint shows that delivery had not been completed, the facts alleged therein do not show a breach of the contract by the defendants and are not sufficient to constitute a cause of action.

The evidence shows that the first carload of grapes left Madera for San Francisco September 6th at 8:30 A. M., and the second carload September 8th at 11:25 P. M. September 9th, M. A. Caldaralla Company wired the plaintiff: "Car Grace number 32,587 (the first car) arrived September ninth all molded and fermented will not accept it you had no right to hold that car there three days for payment according to the contract advise me what you want done with this car." On the next day plaintiff replied: "Refer to telegram grapes were not held on track for nonpayment your agent shipped the car himself." Subsequently the plaintiff sold the remainder of the grapes to E. E. Desmond and then, September 15th, he sent the Caldaralla Company the following telegram:

"Because of your failure to perform under your grape contract with me dated Aug. 26, 1925, I now declare contract cancelled." The plaintiff testified: "When I find out that I could not get any more shook from Mr. Caldaralla and I had some of those grapes and I went to work and entered into a contract with E. E. Desmond, and then I sent that telegram;" and that the reason he stopped shipping grapes to the Caldaralla Company was because that company did not furnish him boxes for the grapes. Jack Placia, who was employed by the Caldaralla Company to ship grapes from Merced to San Francisco, testified that, after the shipment of the second carload, he offered to furnish boxes and that the plaintiff replied: "I don't want any more boxes, because I am through with Mr. Caldaralla."

The contract provides that the seller shall pick and deliver the grapes "at the times directed by the buyer." By reason of that provision, the evidence is uncertain as to whether the buyer was in default in failing to furnish boxes at any time prior to plaintiff's sale of the remainder of the grapes to Desmond. But if it be conceded that the evidence is sufficient to prove that the Caldaralla Company was so in default and that the respondent may rely upon such breach of the contract without having alleged it, the judgment must be reversed on other grounds.

■ The complaint does not allege that the grapes delivered to the defendants were of the quality specified in the contract. The "further and separate defense" of the defendants alleges that the grapes so delivered were "mildewed and moulded and in bad condition." The burden was on the plaintiff to prove that such grapes were of the quality agreed upon. ■ The contract provides that the grapes shall be "in good condition, entirely free from mildew, or smut, or rain, or sand damage and free from any damage whatsoever." The defendants introduced evidence to the effect that such grapes were "mouldy, rotten and leaky, . . . in very bad shape, . . . very soft," with some red berries and "quite a few" green berries; that "most of the grapes was red berries and soft berries and the poorest Zinfandel grade in the county." ·In plaintiff's behalf, the man who had charge of picking the grapes testified that when the grapes were picked their condition was "pretty good"; that he did not see any red or green or soft berries among them or any sand on them. The plaintiff testified: "I know they were good grapes. I know they were first-class grapes. . . . Q. You don't know anything about grapes, do you, or the grape business, do you? A. No, sir. . . . Q. You will say that those grapes were all sound and not in a decayed condition and not mouldy? A. I will say that they was A–1 grapes. I don't know about mouldy, but what was there was very good grapes." There was other evidence to the effect that the grapes were all United States grade number 1. The plaintiff testified that he sold the remainder of the grapes, consisting of two carloads, for the eastern market; that they were inspected by a United States inspector, who graded one carload as number 1 and the other as number 2. No attempt seems to have been

made to contradict the testimony of defendants' witnesses that the grapes were "mouldy" and, as stated, the plaintiff testified that he did not "know about mouldy." No evidence was introduced by either party as to whether or not the grapes were free from mildew. Statements that the grapes were "first class" and "A-1" do not show that they were of the quality specified in the contract, no definition or explanation of those terms appearing in the evidence. Different persons would attach different meanings to those terms. Neither does proof that the grapes were rated as United States grade number 1 establish that they were of the quality agreed upon. Grapes may be so graded when they contain five per cent of seriously damaged grapes and two per cent thereof are affected by mold or decay. ■ If the grapes were not of the quality agreed upon the defendants' refusal to accept them did not constitute a breach of the contract.

■ Imperatrice testified that he was not a member of the defendant partnership. Counsel for plaintiff asked him if he ever held himself out as such a member. On his replying in the negative, he was asked if, during the preceding summer, he did not say to Mary Faso that he "had been a partner of Caldaralla, but the partnership had been disbanded." Imperatrice answered that he had not made the statement. Thereafter counsel for the plaintiff called Miss Faso as a witness and asked her whether she had a conversation with Imperatrice at the time mentioned. The question in no manner indicated the subject matter of the conversation referred to. She replied in the affirmative and was then asked to relate the conversation. Counsel for the defendants said: "We object upon the ground that the proper foundation has not been laid, and it is incompetent, irrelevant and immaterial." Counsel for plaintiff replied: "It is an impeaching question." The court overruled the objection and the witness answered: "There was a deal made between my mother and some other man here in this town, some other business man, and it seems like that this deal was made and Mr. Imperatrice, to my understanding is the man that was so dealing with my mother, and dealing for pears, that was sold to Mr. Caldaralla and Mr. Imperatrice. They were sold by the ton, and was to receive a check for these pears, and the deal was received on consignment, which

was against the agreement that was made. . . . This time that I was talking to Mr. Imperatrice, that is the first time I ever met the man. . . . He said, 'I have bought some fruit from you,' and I said 'You have, . . . what is it?' . . . So I went on and told him the deal was very unjust because they were bought by the ton and received a check on consignment, and so he made this statement to me that Caldaralla, he was with Mr. Caldaralla, that is, Mr. Imperatrice was working in partnership together, but, during this time that the deal on the pears was made, why the partnership disbanded." The admission of this testimony was erroneous and highly prejudicial. ▉ It may be granted that the plaintiff had the right to show that Imperatrice had said that he and Caldaralla had been partners, but the rambling statement of the witness concerning what she termed the "very unjust" deal of the defendants with her mother was inadmissible for any purpose. "The proper method of impeachment is to formulate the question so as to embrace the very statement, at least in substance, which the witness whom it is desired to impeach has denied making, and to ask the impeaching witness for a categorical answer whether the statement was made, giving the circumstances of times, places, and persons present." (*McLaughlin* v. *Los Angeles Ry. Corp.*, 180 Cal. 527, 539 [182 Pac. 44, 49].) ▉ While counsel for plaintiff stated that the question put to Miss Faso was an impeaching question, it would have been improper if asked for the purpose of proving an admission of Imperatrice as a party, being so framed as "to open the door to the admission of incompetent and immaterial evidence." (27 Cal. Jur. 73.) As stated, the question did in fact open the door to evidence which was not only incompetent and immaterial but highly prejudicial and which probably influenced the minds of the jurors against the defendants. Respondent contends that the prejudicial part of the testimony "applied entirely to Imperatrice," against whom no judgment was rendered. It appears, however, that Caldaralla, according to the testimony of Miss Faso, participated in the deal which she testified "was very unjust."

The judgment is reversed, and the trial court is directed to grant the plaintiff leave to file an amended complaint, if he is so advised.

Thompson (R. L.), J., and Plummer, J., concurred.